LAZARE POTTER & GIACOVAS LLP
ROBERT A. GIACOVAS, ESQ.
LAINIE E. COHEN, ESQ.
950 THIRD AVENUE
NEW YORK, NEW YORK 10022
Telephone: (212) 758-9300
Facsimile: (212) 888-0919

Attorneys for Plaintiff, FRANK OWENS

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------x

FRANK OWENS

                Plaintiff,

    v.

GAFFKEN & BARRIGER FUND LLC, et al.,

                Defendants.

2008-CV-8414

-------------------------------------------------------------------x

MARTHA GRAHAM, et al.,

                Plaintiffs,

    v.

LLOYD V. BARRIGER, et al.,

                Defendants.

2008-CV-9357

-------------------------------------------------------------------x

## PLAINTIFF OWENS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF JOINT MOTION FOR THE APPOINTMENT OF A RECEIVER

# TABLE OF CONTENTS

I.  Preliminary Statement .................................................................1

II. Legal Argument .......................................................................1

    A.  Nothing In The *Grupo Mexicano* Decision, or Cases
        Decided Since, Indicate It is Applicable to A Receiver Motion;
        Even So, Plaintiffs *Do* Seek Equitable Relief and *Dechert* Applies.........1

    B.  Owens' Proffered Evidence is Admissible, Regardless of
        Defendants' Petty Allegations to the Contrary; Defendants'
        Evidence Is Wholly Lacking in Credibility....................................6

    C.  Owens Has Established Entitlement to Appointment of a
        Receiver on the Merits.......................................................7

        1.  Plaintiff Has More Than Established a Likelihood
            of Success on His Fraud Claims......................................9

            a.  Proof of Fraud................................................9

            b.  Likelihood of Success at Trial..............................11

        2.  Irreparable Harm is Obvious and Inevitable – The
            Fund is *Admittedly* In Liquidation...................................12

        3.  The Balance of Equities *Do Not* Tip In Defendants' Favor.......15

III. Conclusion ...........................................................................16

# TABLE OF AUTHORITIES

**Cases**                                                            **Page(s)**

Amoco Production Co. v. Gambell,
480 U.S. 531, 542 (1987) ........................................................................... 8

Brick v. Dominion Mortgage & Realty Trust
442 F.Supp. 283 (W.D.N.Y.1977)............................................................... 2

Castle Creek Technology Partners, LLC v. Cellpoint Inc.,
2002 WL 31958696 (S.D.N.Y.2002) .......................................................... 13

De Beers Consol. Mines, Ltd. v. United States,
325 U.S. 212 (1945) ................................................................................... 2

Deckert v. Independence Shares Corp.,
311 U.S. 282 (1940) ................................................................................... 3

Doninger, P.P.A. v. Niehoff,
527 F.3d 41 (2d Cir.2008) .......................................................................... 9

Ferguson v. Tabah,
288 F.2d 665 (2d Cir.1961) ...................................................................... 2,5

Flag Wharf, Inc. v. Merrill Lynch Capital Corp.,
40 A.D.3d 506 (1st Dept.2007) .................................................................. 4

Grupo Mexicano de Desarrollo v. Alliance Bond Fund, Inc.,
527 U.S. 308 (1999) ................................................................... 1,2,3,4,13

Hartford Fire Insurance Co. v. The Evergreen Organization, Inc.,
2008 WL 5454227 (S.D.N.Y.2008) ............................................................ 5

III Finance Ltd., v. The Ageis Consumer Funding Group, Inc.,
1999 WL 461808 (S.D.N.Y.1999) ............................................................ 13

JSC Foreign Economic Ass'n Technostroyexport v. Int'l Development & Trade Servs.,
Inc.,
295 F.Supp.2d 366 (S.D.N.Y.2003............................................................ 3

Mackie v. La Salle Indus.,
92 A.D.2d 821, 822, 460 N.Y.S.2d 313 (1st Dept.1983) ............................. 4

# Table of Authorities (continued)

**Cases**                                                  **Page(s)**

Munaf v. Geren,
128 S.Ct. 2207 (2008) ........................................................................................ 8

Rahman v. Oncology Assocs., Inc.,
198 F.3d 489 (4th Cir.1998) ........................................................................... 3,5

Republic of Philippines v. Marcos,
653 F.Supp. 494 (S.D.N.Y.1987) ...................................................................... 5

Republic of the Philippines v. Marcos,
806 F.2d 344 (2d Cir.1986) .......................................................................... 4,14

Rosen v. Siegel,
106 F.3d 28 (2d Cir.1997) ............................................................................... 12

Schoenholtz v. Doniger,
1984 WL 374 (S.D.N.Y.1984) .......................................................................... 6

Sea Carriers Corp. v. Empire Programs, Inc.,
2006 WL 3354139 (S.D.N.Y.2008) ................................................................ 13

SEC v. ETS Payphones, Inc.,
408 F.3d 727 (11th Cir.2005) ............................................................................ 5

Serio v. Black, Davis & Shue Agency, Inc.,
2005 WL 3642217 (S.D.N.Y.2005) ............................................................... 4,5

Tucker Anthony Realty Corp. v. Schlesinger,
888 F.2d 969 (2d Cir.1989) ............................................................................ 13

Varsames v. Palazzolo,
96 F.Supp.2d 361 (S.D.N.Y.2000) ............................................................... 5,11

Weinberger v. Romero-Barcelo,
456 U.S. 305 (1982) .......................................................................................... 8

Wickes v. Belgian American Educational Fund,
266 F.Supp. 38 (S.D.N.Y.1967) ....................................................................... 8

## Table of Authorities (continued)

**Cases**                                                                 **Page(s)**

Winter v. National Resources Defense Council,
129 S.Ct. 365 (2008)........................................................................................... 8


**Statutes**


F.R.C.P. 8(d).........................................................................................................6

F.R.E. 901 ...........................................................................................................6

F.R.C.P. 66 ..........................................................................................................8


**Other Sources**                                                         **Page(s)**

Wright & Miller,
12 Fed. Prac. & Proc. Civ.2d § 2983 (2008) ……………….......…………………..3,8,11

# I.
## PRELIMINARY STATEMENT

In a desperate attempt to avoid any scrutiny of their actions, Defendants opposition to the motion for a receiver mistakenly cites to Grupo Mexicano, and then misleads the Court by actually misquoting the case to argue that a higher, erroneous standard should control whether a receiver is appointed. As we demonstrate below, case law that Defendants have ignored fully supports the grant of the equitable remedy sought by this motion.

With no law to support their position, Defendants have orchestrated a massive "PR" campaign and proffered cookie cutter declarations prepared by their counsel to claim that a "significant portion" of the investors oppose a receiver. These declarations do not represent the majority of investors; but even if they did, the "opinions" contained in them should be disregarded by the Court. Much like the investors in Bernie Madoff's funds who would have signed declarations supporting his stewardship in the days and months prior to his confession that he was running a Ponzi scheme, the declarations submitted by Defendants, which were solicited on less than full information and lots of fear as to what will happen if a receiver is appointed, are totally irrelevant to this motion.

On this Motion, the Court's determination is simply whether to allow Lloyd Barrgier and his friends to continue to control the liquidation of the Fund without *any* objective third-party oversight. To do so would be tantamount to allowing the fox guard the henhouse. For all of these reasons, a receiver should be appointed.

# II.
## LEGAL ARGUMENT

A.  Nothing In The *Grupo Mexicano* Decision, or Cases Decided Since, Indicate It is Applicable to A Receiver Motion; Even So, Plaintiffs *Do* Seek Equitable Relief and *Dechert* Applies:

As a threshold issue, Defendants urge this Court to deny their Motion outright based on the U.S. Supreme Court decision in Grupo Mexicano de Desarrollo v. Alliance Bond Fund, Inc., 527 U.S. 308, 119 S.Ct. 1961 (1999). This case is inapplicable to the situation before this court. The Grupo Mexicano holding was, as Justice Scalia made very clear, one of very limited applicability. It *only* applies to cases where the plaintiff has alleged *only* legal claims, i.e., for breach of contract, and is seeking to freeze a defendant's assets. In this

regard, Justice Scalia stated: "we hold that the District Court had no authority to issue a preliminary injunction preventing petitioners from disposing of their assets pending adjudication of respondents' contract claim for money damages." Id., at 333. Under its own holding, Grupo Mexicano does not apply to any other set of circumstances.

In fact, Defendants have not cited to any controlling authority for the premise that Grupo Mexicano actually applies to motions for the appointment of a receiver.[1] In their Memorandum ("D.Memo."), Defendants make the following assertion regarding the holding of Grupo Mexicano: "Preliminary *equitable* relief is appropriate 'to grant intermediate relief of the same character as that which may be granted finally,' but such relief is not available where a complaint seeks *primarily* legal remedies. *Grupo*, 527 U.S. at 324-26." (D.Memo. p.14, italics added.) This statement misquotes the Grupo Mexicano decision, and improperly attempts to expand that decision's holding. What the Court *in fact* stated, citing De Beers Consol. Mines, Ltd. v. United States, 325 U.S. 212, 220 (1945), was "a preliminary *injunction* is always appropriate to grant intermediate relief of the same character as that which may be granted finally..." (italics added.) Nor does the Court ever use the word *primarily* to qualify the term "legal remedies" as Defendants assertion indicates. Defendants insert their own language to attempt to convince this Court that Grupo Mexicano is applicable to not just requests for preliminary injunctions, but to *all* types of preliminary equitable relief. The cases decided in Grupo Mexicano's wake simply do not support this expansion of its narrow holding.[2]

---

[1] Interestingly, in support of their likelihood of success argument, Defendants cite to a W.D.N.Y. case that denied a motion for appointment of a receiver in which the court addressed the merits of a request for a receiver, in what was a *purely legal* case. Brick v. Dominion Mortgage & Realty Trust 442 F.Supp. 283 (W.D.N.Y.1977). They also cite to Ferguson v. Tabah 288 F.2d 665 (2d Cir.1961) for the premise that "it is ordinarily presumed that a 'watchdog over all expenditures' is sufficient to protect corporate assets" and thus the current oversight by Defendants and their agents, is sufficient to ensure a fair liquidation process. (D.Memo p. 20.) Ferguson was also a fraud case, seeking *legal* redress for the corporate malfeasance of the defendants, in which the Second Circuit upheld the district court's appointment of *both* a fiscal agent *and* a receiver over defendants. Id., at 674-75. Both cases are still good law.

[2] Notably, in the much-cited treatise on Federal Practice & Procedure, Wright & Miller mention the Grupo Mexicano case at least three times in the chapter dedicated to injunctive relief pursuant to FRCP 65, but do not mention the case even once in the chapter devoted to Receivership pursuant to FRCP 66. Compare, Wright &

In the cases cited by Defendants throughout their memorandum, the equitable relief sought is, as in Grupo Mexicano, an injunction freezing, or seizing a defendant's assets. This is not the type of preliminary equitable relief Mr. Owens seeks. This motion for an appointment of a receiver does not seek to deprive defendants of their assets, but seeks appointment of an objective, third-party to oversee and monitor the liquidation of the Fund – a liquidation that is already well-underway – in order to protect Mr. Owens' as well as all other investors' established interests in the Fund. As the preliminary remedy sought by Mr. Owens is *not* a freeze or seizure of the Fund's assets, Grupo Mexicano is inapplicable.

Moreover, as Defendants admit, these Complaints include equitable claims for relief – unjust enrichment. (O.Compl. ¶¶ 57-59; G.Compl. ¶¶242-244.) Thus, even if their theory is correct – that the cases dealing with injunctive relief *should* govern the Court's authority to grant a receiver – Grupo Mexicano is still not controlling. In such an instance, where *both* legal and equitable claims are asserted, Deckert v. Independence Shares Corp., 311 U.S. 282 (1940) is controlling. See, Rahman v. Oncology Assocs., Inc., 198 F.3d 489, 498 (4th Cir.1998). Defendants however, summarily dismiss these claims, simply declaring that they are wholly dependent upon the success of the fraud claims and are therefore, not *really* equitable. (D.Memo. p. 14.) Defendants cite to *one case* to support this proposition, JSC Foreign Economic Ass'n Technostroyexport v. Int'l Development & Trade Servs., Inc., 295 F.Supp.2d 366, 387-89 (S.D.N.Y.2003) and argue that when a plaintiff brings an action at law *primarily* for a money judgment, preliminary equitable relief of any kind is unavailable. (D.Memo. p. 14.) In advancing this argument, Defendants completely ignore the facts of this case, which are clearly distinguishable.

The plaintiff in JSC Foreign Economic Ass'n., was seeking enforcement of a money judgment previously secured in an underlying case, through an alter-ego action, and sought

---

Miller, 11A Fed. Prac. & Proc. Civ.2d §§ 2941-2943 (2008), with Wright & Miller, 12 Fed. Prac. & Proc. Civ.2d §§ 2981-2983 (2008).

preliminary *injunctive* relief. The Court denied injunctive relief based on the determination that an alter-ego action is not always equitable, and under the facts of the case before it, what the plaintiffs actually sought was a money judgment by way of imposing liability on defendants. Thus, the Court held, plaintiffs claims were in fact, *solely* legal in nature and Grupo Mexicano applied. Id., at 388-389.

Not so here. Unjust enrichment is always a claim in equity, seeking equitable relief where no remedy at law is available to a party.[3] Mr. Owens in this case, seeks an alternative basis for recovery, based on the fact that he has been deprived of an adequate contractual remedy by Defendants. Mr. Owens is not a party to the contract that controls an investment in the Fund, and can therefore not utilize that contract to recover his investment. He therefore seeks restitution from Defendants of his $2 million investment, by which they have been unjustly enriched.[4]

Moreover, the prayer for relief seeks not only compensatory damages, but restitution, the imposition of a constructive trust, as well as disgorgement of commissions and fees Defendants earned in connection with the transaction. These remedies have been held as sufficient to support a finding of the requisite authority to award preliminary injunctive relief. [5] Serio v. Black, Davis & Shue Agency, Inc., 2005 WL 3642217 at *9 (S.D.N.Y.2005) (application in complaint for disgorgement and constructive trust sufficient to establish authority of court to grant preliminary injunctive relief requested); Republic of

---

[3] "The doctrine of unjust enrichment 'rests upon the equitable principle that a person shall not be allowed to enrich himself at the expense of another'" Flag Wharf, Inc. v. Merrill Lynch Capital Corp., 40 A.D.3d 506, 507 (1st Dept.2007) citing Mackie v. La Salle Indus., 92 A.D.2d 821, 822, 460 N.Y.S.2d 313 (1stDept.1983) appeal dismissed 60 N.Y.2d 612 (1983).

[4] The Graham Plaintiffs similarly assert a claim for unjust enrichment, seeking disgorgement of "all compensation, emoluments and consideration [Defendants] received in connection with the Fund or with plaintiffs' investments, up to the losses plaintiffs suffered," further supporting a determination that this case is both legal *and* equitable in nature.

[5] We also point out that Mr. Owens' fraud claims in essence, seek the rescission of the fraudulent transaction and restitution of the consideration he paid -- his $2 million investment. Under the Dechert decision, Mr. Owens' claims are equitable in nature, and Grupo Mexicano is inapplicable. "It is enough at this time to determine that the bill contains allegations which, if proved, entitle petitioners to some equitable relief." Dechert, at 289.

the Philippines v. Marcos, 806 F.2d 344, 355 (2d Cir.1986) (when property acquired in such circumstances that holder of legal title may not in good conscience retain beneficial interest, "equity converts him into a trustee" and the court "reserves freedom to apply [remedy of constructive trust] to whatever knavery human ingenuity can invent;" quoting Justice Cardozo (citations omitted) – authority existed to grant preliminary injunction based on claim for imposition of constructive trust or equitable lien *as remedy*).

Defendants then assert, *again without any authority*, that "most significantly" because Plaintiffs have not sought the appointment of a receiver in their Complaints, they are not entitled to seek an appointment preliminarily. This is simply not the state of the law. See e.g., Serio, supra; Ferguson v. Tabah, supra; Rahman v. Oncology Assocs., Inc., supra; Republic of Philippines v. Marcos, 653 F.Supp. 494 (S.D.N.Y.1987); Schoenholtz v. Doniger, 1984 WL 374 (S.D.N.Y.1984) (*defendants* moved for receiver; denied for lack of evidence).

When a plaintiff asserts multiple claims, some sounding in law and others in equity, as Plaintiffs do here, "the court may use its equitable powers to preserve assets if done for the satisfaction of a potential judgment on the equitable claims." Serio, at *9 citing SEC v. ETS Payphones, Inc., 408 F.3d 727, 734-35 (11th Cir.2005). See, also Hartford Fire Insurance Co. v. The Evergreen Organization, Inc., 2008 WL 5454227 at *3-4 (S.D.N.Y.2008) citing Deckert (complaint averred legal and equitable claims; district court had authority to grant injunctive relief); Varsames v. Palazzolo, 96 F.Supp.2d 361 (S.D.N.Y.2000) (complaint asserted *seven* legal claims along with unjust enrichment; plaintiffs sought appointment of receiver; denied because *plaintiffs owned the property over which they sought appointment,* not for lack of authority). Thus, even under Defendants' theory that the same authority is required to award *all* preliminary equitable relief, Plaintiff has met this test.

B.    Owens' Proffered Evidence is Admissible, Regardless of Defendants' Petty
      Allegations to the Contrary; Defendants' Evidence Is Wholly Lacking in Credibility:

Defendants oppose this Motion by first arguing that Plaintiffs' proffered evidence is inadmissible. They claim that it should be ignored by this Court in its entirety. For this premise, Defendants first assert that Owens' unverified Complaint is not evidence, because FRCP 8(d) allows for alternative or inconsistent claims. They do not cite to any case law to support their position. FRCP 8(d) addresses a party's failure to deny averments in a pleading. It does not address the issue of pleading in the alternative. Moreover, merely because Mr. Owens may plead alternative *claims* for relief, does not make the factual allegations in the complaint unreliable, as Defendants argue. Even so, Mr. Owens has now attested to the facts averred in his complaint under penalty of perjury, in the March 5, 2009 declaration filed herewith. This issue is therefore moot. Moreover, Mr. Owens' version of the facts has now been corroborated by Morty Baum, the attorney (and admitted long-time friend of Barriger (See February 23, 2009 Declaration of Lloyd Barriger, "B.Decl." ¶70)).

Defendants further attack the declaration of Robert A. Giacovas, and move to strike it in its entirety along with the exhibits attached thereto. Mr. Giacovas' January 23, 2009 Declaration, which provides an explanation to the Court of what the information contained in the documents attached shows regarding Defendants misdeeds, has now been sworn to under penalty of perjury in his March 5, 2009 declaration filed herewith, thus correcting any error in this regard. ("G 3/5 Decl." ¶ 2.) The Court is of course free to analyze those documents itself, and draw its own conclusions therefrom.

As for the exhibits attached to Mr. Giacovas' declaration and filed as Joint Exhibits to Plaintiffs' Motion, Defendants argue that these documents have not been authenticated pursuant to FRE 901 and should therefore be stricken from the record. These documents were provided to Mr. Owens *by Defendants*. (G. 3/5 Decl. ¶ 3.) If they are now taking the position that nothing that they have provided to Mr. Owens in this case is authentic, then what can Mr. Owens possibly rely on as the truth regarding what is and has been going on with the Fund? This game-playing by Defendants only emphasizes the reasons why a

receiver is necessary – to provide the investors with much needed transparency, and *objective,* third-party oversight.

In contrast to Plainitffs' evidence, a significant part of which is a declaration from a local attorney that even Barriger calls a friend, the defendants have proffered the self-serving declaration of the man who, for all intents and purposes *is* all of the defendants, (B.Decl. ¶¶ 2, 3, 10, 44.) and the two individuals he personally hired to aid in the liquidation of the Fund. (B.Decl. ¶44, 48; Q.Decl. ¶8; L.Decl. ¶3.)[6] Barriger's motivations for lying are self-evident. He's accused of fraud.

As to the integrity and credibility of Suzanne Loughlin, she has lied under oath and therefore has none. Contrary to Loughlin's assertions that neither Firestorm nor she "had any involvement with the Fund, Mr. Barriger or Mr. McKean, either on a personal or professional basis," prior to her retention as crisis and litigation manager (L.Decl. ¶ 4), Loughlin had known both men for years. (G. 3/5 Decl. ¶4.) Loughlin is hardly the disinterested, objective third-party she swears to be. Loughlin's loyalties clearly lie with Barriger and McKean, and as such, her decision-making on behalf of the Fund cannot be trusted as being in the best interests of anyone else other than her friends, Lloyd Barriger and Andrew McKean. The Court is free to discount her testimony altogether as biased and without credibility.

The evidence and declarations are all properly before this Court, and it is now in the Court's discretion to give it the weight it deserves. We submit that there is substantial admissible and compelling evidence submitted by Mr. Owens to support this Motion. With this in mind, we turn now to Defendants' arguments on the merits.

C.    <u>Owens Has Established Entitlement to Appointment of a Receiver on the Merits</u>:

Here again, Defendants attempt to apply the elements and burdens of establishing a right to preliminary injunctive relief on Plaintiff, giving only passing lip-service to the

---

6 Declarations of William Quinn, dated February 18, 2009 and Suzanne Loughlin, dated February 20, 2009.

somewhat different balancing of factors, and judicial reasoning applicable to motions for a receiver. (D.Memo, p. 15.) Defendants state that "a party seeking a *preliminary injunction* must demonstrate that 1) he is likely to succeed on the merits; 2) he is likely to suffer irreparable harm; 3) that the balance of equities tips in his favor; and *4) that an injunction is in the public interest.*" (D.Memo, pp. 15, 24-25, italics added.) In this way, Defendants attempt to add an entirely new element (No. 4) for Plaintiffs to establish – one that the cases discussing receiver under FRCP 66 simply do not require.[7] See, Wright & Miller, 12 Fed. Prac. & Proc. Civ.2d § 2983 (2008). This is yet another example of Defendants' continuing habit of attempting to mislead this court into applying a higher level of scrutiny than the law requires, to Mr. Owens' claims.

The test for receivership is stated somewhat differently. While *in more general terms*, a plaintiff's probability of success on the merits and the possibility of irreparable injury are weighed, receivers will be appointed in order to protect the interests of the plaintiff, where it is shown that an emergency exists. See Wickes v. Belgian American Educational Fund, 266 F.Supp. 38, 40 (S.D.N.Y.1967) cited by Defendants; Wright & Miller, supra, and cases cited therein. Courts will usually weigh the factors fully addressed by Plaintiffs in their Memorandum of Law in support of the Motion for Appointment of Receiver ("P.Memo."), and set forth at p. 11. As Defendants have organized their arguments in terms of the requirements of 1) likelihood of success on the merits; 2) irreparable harm; and 3) balance of equities, we will attempt to address them in that fashion.

---

[7] Defendants cite to Winter v. National Resources Defense Council, 129 S.Ct. 365 (2008), for this test. This case involves a federal agency – the Navy – seeking to overturn an injunction only, and cites to cases similarly involving state actors, i.e., Secretary of the Army (Munaf v. Geren, 128 S.Ct. 2207, 2218-19 (2008)); the Village of Gambell, Alaska (Amoco Production Co. v. Gambell, 480 U.S. 531, 542 (1987)); and Secretary of Defense (Weinberger v. Romero-Barcelo, 456 U.S. 305, 311-12 (1982)); all seeking injunctive relief. None of these cases involve either a private plaintiff, or a motion for receivership – this "public policy" inquiry, as Defendants own choice of words admits, is applicable to *injunctive relief* made in the public interest.

1. **Plaintiff Has More Than Established a Likelihood of Success on His Fraud Claims:**

Defendants here combine two of the factors courts look to in analyzing a request for the appointment of a receiver – a showing of fraud by defendants, and likelihood of prevailing at trial.[8] These are actually two different issues, which Defendants have lumped into one.

a. **Proof of Fraud:**

As to the first issue, Defendants attempt to mislead the Court by diverting its attention to the more narrow issue of Mr. Owens' allegations contained in his Complaint. Defendants further attempt to diminish the fraud that Plaintiffs have laid out for the Court in the six-page statement of facts in Plaintiffs' Memo by asserting that Plaintiffs only rely on the 8% guarantee as proof of fraud. (D.Memo. p. 17.) They then assert that Plaintiffs have failed to establish any "nexus" between the fraud perpetrated on Mr. Owens by Barriger and the need for a receiver, because the Fund is closed to new investors. (D.Memo. p. 19-20.) What Defendants fail to recognize is that the laundry list of material omissions and insider deals set forth in Plaintiffs' Memo, that were kept from *all* of the Fund's investors, and that their own documents prove have been ongoing for years, is, as a whole, what entitles Plaintiffs to the appointment of a receiver. The "nexus" Defendants allege Mr. Owens has failed to prove is obvious.

The fraud that Defendants have been perpetrating began before Mr. Owens walked into the offices of Barriger & Barriger seeking a trustworthy investment advisor. It began (at least) when the sub-prime mortgage market started crumbling in early 2007, and Defendants began borrowing money from investors, the actual necessity of which, given the access to $20 million in Textron funds, has been left unaddressed by Defendants. (B.Decl.

---

[8] As an initial matter, we note that in a footnote, Defendants once again attempt to impose a higher burden on Plaintiffs by alleging that a motion for receiver is actually a "mandatory injunction" and thus requires proof demonstrating "clear" or "substantial" likelihood of success, citing to Doninger, P.P.A. v. Niehoff, 527 F.3d 41, 47 (2d Cir.2008) (D.Memo. p. 16, fn.14.) The Doninger case does not involve a motion for receiver – it involves an injunction in a First Amendment case. Defendants have not provided any authority involving a motion for a receiver for this premise, nor can they. Id.

¶¶ 52, 53.) The fraud continued through to September 20, 2007, when the Fund's biggest debtor went bankrupt, coincidentally owing the Fund over $2.2 million, and continued when Barriger sat Mr. Owens down and defrauded him out of his $2 million in retirement funds, without disclosing that the Fund had, *just six days' earlier*, suffered such a financial hit.[9]

The fraud then continued through the fall and winter of 2007-2008 when Defendants paid off insider creditors even while the Fund struggled to stay afloat, and who *to this day*, Defendants have refused to reveal their identity even to this Court. (B.Decl. ¶ 52; Plaintiffs' Joint Exhibits, ("Joint Ex.") Ex. C.) It continued when the Fund made two large redemptions to *still* undisclosed investors during this same timeframe – when the Fund was on the verge of collapse, although Barriger was allegedly oblivious.[10] (B.Decl. ¶¶36-39; Joint Ex., Ex. C.) The fraud continued through the freeze of the Fund's assets and continues to this day, with Defendants' absolute refusal to provide full disclosure of the goings on and insider dealings involved in the liquidation of the Fund.

Even the so-called "informed investors" that Defendants cajoled, by fear and divisive rhetoric, into signing declarations on the Fund's behalf have not been provided with full disclosure; and the fraud continues. The summary of the investors' meeting held by Barriger and Quinn shows the meeting was essentially a P.R. campaign, providing investors with truncated information on the Fund's activities over the past year. Those investors were not even provided with the same information Mr. Owens has been privy to – they were told even less. (B.Decl. ¶50, 51; Ex. K.) How can their blind ratification of Barriger's self-

---

[9] Defendants attempt to dismiss this incident as having no bearing on the Fund's bottom line, as they do the other instances of secretive and shady dealings set forth by Plaintiffs in their Memo. However, Defendants do very little to actually provide any explanation as to why this bankruptcy, and these other deals were of no consequence to the Fund's health. (B.Decl. ¶¶ 43; 60; 62; 66.)

[10] We find in fascinating that both Barriger and Quinn barely mention the sorry state of the U.S. economy throughout 2007, and instead assert, in the face of all evidence to the contrary, that the sub-prime mortgage crisis had no real effect on the broader market or the Fund until March 2008, when Defendants were allegedly surprised that the Fund was suddenly, and without notice, in crisis. (B.Decl. ¶¶ 33-35; 40-41; Q.Decl. ¶¶ 15, 16.) Even the least financially savvy American knows this crisis started as early as the beginning of 2007, if not earlier, and grew exponentially worse over that summer. (See Plaintiff's Request for Judicial Notice, filed in support of his Opposition to Defendants' Motion to Dismiss.)

interested leadership be seen as evidence of anything but more reason for this Court to allow for the appointment of a disinterested, objective third-party, to shine a light on Defendants' secretive actions and give *all* investors the full transparency they deserve?

Defendants continue to assert, even as they file a supplemental declaration and more signed declarations by "informed investors" that "a significant portion" of investors do not want this receiver, although nowhere in their papers do Defendants disclose how many investors there actually are in the Fund. Counsel had previously indicated the number was somewhere around 150. This means that only *one-third* of the Fund's investors, many of which were not even at the meeting, and are therefore relying solely on Barriger's self-serving summary of events as the basis for their "informed" ratification, have signed on. Nor do Defendants mention what percentage of the Fund's membership these investors represent, or that *Mr. Owens* is actually one of the top two investors, holding potentially a much larger percentage of the Fund's equity. (O.Decl. ¶¶ 16, 17.) Defendants quip that they know of no investors who support Plaintiffs in their bid for transparency. An interesting comment, given the fact that Defendants refuse to disclose the names of investors in the Fund to Plaintiffs.

Based on all of the foregoing, and all arguments made in Plaintiffs' Memo, the Joint Exhibits and Declarations filed herewith, Mr. Owens has more than evidenced an ongoing fraud by Defendants that will continue unfettered unless and until they are forced to bring their dealings out into the open. That is what a Receiver will do for all investors – provide much needed transparency and third-party oversight.

### b.   Likelihood of Success at Trial:

We turn then, to the "general" likelihood of *Mr. Owens* succeeding at trial. Varsames, supra; Wright & Miller, supra. As Mr. Owens and Mr. Baum's declarations make clear, Barriger's "assumption" that Mr. Owens had been counseled by Mr. Baum regarding an investment in the Fund, and that he therefore did not need to fully inform Mr. Owens of the highly risky nature of the Fund *before* he invested, lacks *any* credibility.

When he had Mr. Owens in his office, and was selling the investment to him, why would he then wait until *the next day* to mail the Fund documents to Mr. Owens? Barriger provides no reasonable explanation for why he did not provide those documents to Mr. Owens that day in his office, nor does this explain why the signature on the letter allegedly sent to Mr. Owens on September 26, 2007 was forged. This is especially so, in light of the fact that the money did not miraculously appear in the Fund's account unsolicited and Barriger swears, (B.Decl. ¶¶ 74-77) but McKean called Baum that same day and gave instructions on where to deposit the funds. (O.Decl. ¶¶ 2-9; 15; Baum Decl. ¶¶ 3-11.) The only plausible explanation is that Barriger purposely withheld that information from Mr. Owens, and then tried to cover his tracks later when Mr. Baum contacted him on Mr. Owens' behalf. Mr. Owens has clearly provided the Court with more than ample proof of the fraud committed upon him by Defendants, and has thus sufficiently established the likelihood of his success at trial.

## 2. Irreparable Harm is Obvious and Inevitable – The Fund is *Admittedly* In Liquidation:

Defendants erroneously assert that Plaintiffs' only basis for establishing irreparable harm is that insiders have been moved ahead of Plaintiffs in line for payment. This assertion is certainly a very narrow reading of Plaintiffs' Memorandum. Taken *as a whole*, the argument made by Plaintiffs is clear – the Fund is in liquidation and *there will be no more Fund by the time this case reaches judgment.* As such, there will be no way for Plaintiffs to ever recover on their claims in this case. This is so, for *all* of the reasons set forth in Plaintiffs' Memo, not just because Defendants have moved previously unsecured creditors into secured positions, or because Barriger himself, as part-owner of Campus Capital, is admittedly one of those previously unsecured creditors. (B.Decl. ¶ 61)[11]

---

[11] Defendants argue that a conflict of interest does not justify appointment of a receiver where a defendant is aware of his fiduciary duties and is subject to oversight, citing <u>Rosen v. Siegel</u>, 106 F.3d 28, 33-34 (2d Cir.1997) (receiver denied because Court was "obviously frustrated" with plaintiff who "was being unreasonable and had ignored some of the court's instructions;" *not* because he was instructed of is fiduciary duties). As argued *infra*, Barriger is hardly subject to objective disinterested oversight, nor should the Court accept the word of Barriger that he will uphold his fiduciary duties to Plaintiffs – he clearly isn't.

However, we find it significant that the debt to these previously unsecured creditors Defendants insist was negotiated on "commercially reasonable terms" has jumped exponentially in the last six months, one can assume by way of accrued interest, from $4.95 million to $7.5 million. (Joint Ex., Ex. J, O.) At this rate, one can extrapolate, that if these junior creditors are not paid back in the near future, the debt owed to them will easily surpass the value of the Fund's assets, which Quinn puts at $26 million as of October 31, 2008, but admits that the "ability to realize that value is "dependent on external factors over which [the Fund] has no control." (Q.Decl. ¶¶ 26, 28, 29.) On top of all this, Defendants have threatened to file for bankruptcy on more than one occasion, and most recently, in their opposition to this Motion, Defendants indicate a preference for filing for bankruptcy rather than see Plaintiffs ever recover a dime, after they prevail at trial in this case. (L.Decl. ¶ 14.) Such threats have been determined a basis for a finding of irreparable harm in regards to injunctive relief. Tucker Anthony Realty Corp. v. Schlesinger, 888 F.2d 969, 975 (2d Cir.1989) (ample evidence of imminent bankruptcy absent issuance of preliminary injunction).

Defendants argue that the dissipation of assets from which Plaintiffs may eventually collect a judgment, is not grounds for equitable relief. In support of this assertion, they cite to Grupo Mexicano and state that this evidence is not a "harm" to be considered under the Winter test. (D.Memo. p. 21.) Again, Defendants rely on injunctive relief cases. Thus, Mr. Owens refers the Court to the following line of cases that establishes there is a recognized exception to the monetary recovery bar on equitable relief in injunction cases where the defendant is insolvent, or insolvency is imminent. In such cases, irreparable harm is clear – by the time the parties reach the judgment stage, there will be nothing from which a plaintiff can recover. Brenntag Int'l Chemicals, Inc., at 249-250; Sea Carriers Corp. v. Empire Programs, Inc., 2006 WL 3354139 at *4 (S.D.N.Y.2008); III Finance Ltd., v. The Ageis Consumer Funding Group, Inc., 1999 WL 461808 at *4 (S.D.N.Y.1999); Castle Creek Technology Partners, LLC v. Cellpoint Inc., 2002 WL 31958696 at *3-4 (S.D.N.Y.2002).

13

Preliminary equitable relief is therefore "proper to prevent a defendant from making a judgment uncollectible." Republic of Philippines v. Marcos, 806 F.2d 344, 356 (2d Cir.1986). This is certainly the case here.

Defendants argue that the Fund is subject to "standard oversight checks on management typical of private equity funds," as well as the oversight of Textron and the experts hired by Barriger. They insist that all of this oversight is sufficient to prevent any irreparable harm from occurring. (D.Memo. p. 22.) Mr. Owens has previously addressed the self-interest of Textron in Plaintiffs' Memo and will not belabor the point here. However, the assertion that the "standard oversight checks on management typical of private equity funds" protect Mr. Owens' interests is meaningless, given that the one responsible for all oversight of the Fund is Barriger. Whether the experts that are aiding Barriger in the liquidation process are "prudently managing Fund assets" (D.Memo. p. 22) is an assertion lacking any solid evidence. Defendants provide a great deal of commentary regarding what they have been doing to prudently manage the Fund's assets, with very little substance. They do not provide any of the regular reports submitted to Textron, or any of the audits that have been undertaken. Defendants expect the Court to just take their word for it. No proof is necessary. (B.Decl. ¶¶ 47, 58; Q.Decl. ¶¶ 21.)

If *in fact*, the Fund's assets are being prudently managed, and the liquidation, if it were to continue on its current course, would ensure Mr. Owens will be able to recover his $2 million investment, Mr. Owens would not object to Mr. Quinn continuing in his role, *with disinterested third-party oversight, and third-party approval*. However, the reality is, Defendants have refused and continue to refuse to provide investors with the full transparency that would satisfy these concerns. Instead, they continue to provide half-truths, withhold critical information, and most importantly, Barriger continues to run the show with no disinterested oversight, and no one to answer to but his own self-interest.

The time to ensure the Fund is liquidated in an orderly and fair fashion is now. After the Fund is liquidated, there will be no assets from which Plaintiff can recover. Barriger,

through counsel, has admitted to being judgment-proof. Barriger Capital has ceased doing business.[12] The remaining defendants have admitted, again through counsel, to being insolvent. There is no possibility of recovery for Mr. Owens unless the Fund is required to liquidate with the best interests of the investors in mind – not the interests of Barriger and his cronies. The status of the Fund is clearly in an emergency situation and only the disinterested third-party oversight of a court-appointed receiver can shed any light on Defendants' dealings and ensure that the Fund is wound down in such a way that all investors' interests are protected – not just Defendants.

### 3. The Balance of Equities *Do Not* Tip In Defendants' Favor:

Defendants argue it would be much more harmful to the Fund than to Plaintiffs because the Fund may lose access to operating costs with its secured creditors. However, they offer no proof of this assumption. They insist a receiver is not appropriate because there is a significant risk that Barriger would refuse to cooperate in any fashion with the liquidation if this were to happen. This threat flies in the face of all of their previous arguments that Barriger is an upstanding citizen, one well-aware of his fiduciary duties, who is deeply concerned with the interests of his investors. On the contrary, a disinterested court-appointed third-party that would oversee Barriger's actions *should* provide Barriger with the support and ratification that he *should* welcome, given the very serious allegations made against him.

Defendants have not proffered any *real* reasons why a receiver would be more harmful than helpful, they only raise questions that could easily be addressed once the Court has made a decision. Thus, as argued fully in Plaintiffs' Memo, the balance of equities clearly tips in favor of a receiver.

---

[12] Although notably, Barriger Capital (solely owned by Barriger) was paid back $450,000 by the Fund just before Barriger shut its doors, and there has been no mention as to what happened to that money. (Barriger Decl. ¶¶ 64-65.)

## III.
## CONCLUSION

For all of the foregoing reasons, Plaintiff respectfully requests that this Court issue an Order Granting Plaintiffs' Joint Motion for the appointment of a receiver over the Gaffken & Barriger Fund, LLC, and further grant any further relief as the Court may deem just and proper.

Dated: March 6, 2009
New York, New York

LAZARE POTTER & GIACOVAS LLP

By: _____
Robert A. Giacovas
Lainie E. Cohen
950 Third Avenue
New York, New York 10022
Telephone (212) 758-9300
Facsimile: (212) 888-0919
rgiacovas@lpgllp.com
lcohen@lpgllp.com
Attorneys for Plaintiff, Frank Owens